[Filed January 6, 1891.]

## SYLVESTER PENNOYER ET AL. *v.* WILLIAM WADHAMS.

WILL — DEVISE FOR RELIGIOUS PURPOSES — PUBLIC CHARITY — EXISTENCE OF BENEFI-CIARIES.— A testator devised certain real estate to trustees for the purpose of having erected on a designated portion thereof a Presbyterian church, to be known as the "First Presbyterian Church of Upper Astoria," for the use of the society of said church, and of a parsonage for the use of the pastor in charge thereof. For the purpose of carrying out this trust, he authorized and empowered the trustees to sell any and all of the land devised, except that portion on which the church and parsonage were to be built, and directed that the proceeds of such sale be applied in the erection and furnishing of said church and parsonage ; and after such church and parsonage should be erected and furnished, the trust to wholly cease and determine in the trustees as to said church, parsonage and furniture, as well as to any unsold property or unexpected proceeds of sales, and to vest in and be carried on by the board of trustees of the "First Presbyterian Church of Upper Astoria" and their successors in office in trust "for the purpose of advancing and propagat-ing the Christian religion through the agency of the Presbyterian Church." *Held* a charitable trust valid against the testator's heirs, although there was no Presby-terian Church organization or society in Upper Astoria at time of testator's death.

Clatsop county: FRANK J. TAYLOR, Judge.

One defendant appeals.   Reversed.

This is a suit in equity to foreclose a mortgage of $4,000, executed by Truman P. Powers, in his life-time, upon a tract of land containing eighty acres adjoining Upper Astoria and six blocks in Upper Astoria.   The complaint is in the usual form.   The defendant Wadhams answers separately, alleging that he is the holder in trust of the legal title to a certain portion of the real estate described in the mortgage for the use and benefit of the First Presbyterian Church of Upper Astoria, in accordance with the last will and testament of said Powers, and asking that defendant Leinenweber's property be first sold.   The defendant Mary H. Leinenweber also files an answer in which she denies the allegations of Wadhams' answer, and alleges that she is the sole heir and residuary legatee of Powers.   Upon the issues thus made between defendants Wadhams and Leinenweber the cause

was tried, which resulted in a decree in favor of defendant Leinenweber, from which decree Wadhams brings this appeal.

*H. B. Nicholas,* and *J. Q. A. Bowlby,* for Appellant.

If a donor makes a gift in trust for a particular charitable purpose, or if the trustee is not *in esse* but yet to come into existence, courts of equity can establish the charity, for it is their invariable practice not to allow a legal and valid trust to fail for want of a trustee. The court will appoint trustees. (Perry on Trusts, § 722; *Webster* v. *Morris,* 66 Wis. 397; *Morville* v. *Fowle,* 144 Mass. 111; *Storrs* v. *Whitney,* 54 Conn. 342; 2 Jarman on Wills, 207 n; *McGin* v. *Aaron,* 1 Pa. 49; *Trustees* v. *Beaty,* 28 N. J. Eq. 570; *Heiskell* v. *Chickasaw Lodge,* 87 Tenn. 677; *Russell* v. *Allen,* 107 U. S. 163.)

We cite the following authorities upon charitable devises: Beach on Wills, § 136; *Jones* v. *Habersham,* 107 U. S. 174; *Russell* v. *Allen, Id.* 163–173, and cases cited; *Raley* v. *Umatilla Co.* 15 Or. 173, 182, 3 Am. St. Rep. 142; 2 Perry on Trusts, §§ 700, 701, 687, 722, 709; Story's Equity, §§ 1164, 1181, 1173; 2 Kent, 285; *Hunt* v. *Fowler,* 121 Ill. 269; *Reformed Dutch Church* v. *Mott,* 7 Paige, 77, 32 Am. Dec. 613; *Bishop's Residence Co.* v. *Hudson,* 91 Mo. 671.

*Raleigh Stott,* for Respondent.

The devise was not a *public* charity. "If in a gift for private benefit the *cestui que trust* are so uncertain that they cannot be identified or *cannot come into court and claim the benefit conferred upon them* the gift will *fail and result to the donor, his heirs or legal representatives.*" (2 Perry on Trusts, §§ 687, 712, 729, 730, 732; *Stratton* v. *Physio-Medical College,* 149 Mass. 505, 14 Am. St. Rep. 442; *Raley* v. *Umatilla Co.* 15 Or. 172, 3 Am. St. Rep. 142; *Cox* v. *Walker,* 26 Me. 504; *Attorney-General* v. *Soule,* 28 Mich. 153; *White* v. *Howard,* 46 N. Y. 144.)

BEAN, J.—On March 12, 1883, Truman P. Powers executed his last will and testament, which among other devises and bequests, contained the following:

"*Sixth,* I give, devise and bequeath to Christian Leinenweber, of the town of Upper Astoria, Clatsop county, Oregon,

and William Wadhams, of the city of Portland, Multnomah county, Oregon, and the survivor of them, unless the same shall be conveyed by me prior to my death, blocks Nos. 57, 49, 85 and 99, and lots Nos. 3 and 4, in block No. 37, in the town of Upper Astoria, Clatsop county, Oregon, as laid out and recorded by John Adair, and twenty acres of land in a square tract out of the N. E. corner of the S. E. quarter of John Adair's donation land claim, in trust for the sole use, benefit and behoof of the First Presbyterian Church of the town of Upper Astoria, Clatsop county, Oregon, as laid out and recorded by John Adair, and which said lots, blocks and tract of land are devised and bequeathed for the sole and express purpose of having erected and built on said lots 3 and 4, in said block 37, in said town of Upper Astoria, a Presbyterian Church, to be known and designated as 'the First Presbyterian Church of the town of Upper Astoria,' for the use of the society of said First Presbyterian Church, and of a parsonage for the sole use and benefit of the pastor in charge of said First Presbyterian Church, and to the furnishing said church and parsonage with suitable, neat and substantial furniture.

" And for the purpose of fulfilling and carrying out said trust, I hereby direct, authorize and empower my said executors, Christian Leinenweber and William Wadhams, and the survivor of them, without any order of the probate court of Clatsop county, Oregon, to sell any and all said lots or tracts of land, except lots 3 and 4, in block 37, for such sums of money as shall to them seem just and right, and to give to the purchaser or purchasers of said lots or tracts of land, or any part or portion thereof, all necessary bonds, deeds and conveyances therefor.

" And all sums of money so realized by my executors and the survivor of them, shall be loaned by them on good real-estate security until four years from the date of my decease, and at which said date said money shall be applied by my said executors to the erection of a Presbyterian Church to be known and designated as the First Presbyterian Church

of the town of Upper Astoria, for the use of the society of the said First Presbyterian Church and of the parsonage, for the sole use of the pastor in charge of said First Presbyterian Church, to the furnishing said church and parsonage with suitable furniture.

"And after the erecting and furnishing of said church and parsonage, said trust shall wholly cease and determine in my said executors and the survivors of them, and said trust shall thereupon vest in and be carried on by the board of trustees of said First Presbyterian Church of the town of Upper Astoria, and by their successors in office.

"And if, after the said church and parsonage shall be erected and furnished, any money shall be left from the proceeds of the sale of tracts and lots of land or of any portion thereof, or if any of said lots or tracts of land shall remain unsold, then, and in that event, said trust shall cease and determine as to said money and unsold property as well as to said church and parsonage, and church and parsonage furniture, and to said lots 3 and 4 in said block 37 on which said church and parsonage shall be built, in my said executors and the survivor of them, and shall vest and remain in, and be carried on by the board of trustees of said First Presbyterian Church of Upper Astoria, Clatsop county, Oregon, and their successors in office, in trust to the said board of trustees and their successors in office, for the purpose of advancing and propagating the Christian religion through the agency of the Presbyterian Church.

"And I desire and direct that my executor, Christian Leinenweber, should be elected and added to said board of trustees of said First Presbyterian Church of Upper Astoria for the term of his natural life, or during his pleasure, to enable him the better to assist in the carrying out of my wishes as set out in this bequest. This bequest is for the benefit of my grandchildren, to interest them in working for and supporting and believing in the Church and Gospel of our Lord and Savior Jesus Christ, to whom, with the

Father and the Holy Ghost, be glory and honor, dominion and power, world without end.  Amen.

"And to enable all in the vicinity of Upper Astoria to enjoy the privileges of that glorious Gospel, which, to hear aright, is everlasting life.

"*Seventh*, all the rest, residue and remainder of my estate, both real, personal and mixed, of which I shall die seized and possessed, after the payment of all my just debts and all the expenses of my last sickness and burial, I give, devise and bequeath unto my adopted and beloved daughter, Mary Leinenweber, in fee simple to the said Mary Leinenweber."

At the time of Powers' death, in July, 1883, there was no First Presbyterian Church or any Presbyterian Church organization, association or society in Upper Astoria, nor has any such Church been organized or established since his death.

The contention of respondent is, that the devise to Wadhams and Leinenweber was a private trust and not a public charity, and there being no certain specified beneficiaries in existence at the time of the testator's death, is void.  The requisites of a valid private trust and one for a charitable use are materially different.  In the former, there must not only be a certain trustee who holds the legal title, but a certain specified *cestui que trust*, clearly identified or made capable of identification by the terms of the instrument creating the trust, while it is an essential feature of the latter that the beneficiaries are uncertain—a class of persons described in some general language, often fluctuating, changing in their individual members and partaking of a *quasi* public character.  Indeed, it is said a public charity begins where uncertainty in the recipient begins.  (2 Pomeroy, Eq. § 1018; 2 Perry on Trusts, § 687; *Raley* v. *Umatilla County*, 15 Or. 172, 3 Am. St. Rep. 142.)  When the object and purposes for which a trust is intended to be created are once determined to be charitable, very different rules from those that are applied in administering and establishing private trusts will be applied, in order to give effect to the intention of the donor and establish the

charity. In a private trust, if the *cestui que trusts* are so uncertain, or are so incapable of taking that they cannot be identified, or cannot, by legal or equitable proceedings, claim the benefit conferred upon them, the gift will fail and revert to the donor or his heirs. But if a gift is made for a public charitable purpose, it is immaterial that the *cestui que trusts* are indefinite or uncertain, or that the trustee is uncertain or incapable of taking. Courts of equity look with favor upon all such trusts, and endeavor to carry them into effect if it can be done consistently with the rules of law. With regard to the origin and extent of the equitable jurisdiction over charitable trusts in this country, there is the utmost conflict of judicial utterances in the earlier cases. The opinion seems formerly to have prevailed that the peculiar equitable jurisdiction over charities, except where a trust valid by the ordinary rules of law and equity was created, was derived solely from the statute of 43 Elizabeth, chap. 4. It was so held by the supreme court of the United States in the case of *Baptist Association* v. *Hart*, 4 Wheaton, 1; but in the case of *Vidal* v. *Girard Ex.* 2 Howard, 126, the court had occasion to re-examine the question; and after an able and exhaustive argument by eminent counsel, in a learned opinion delivered by Justice STORY, practically overruled the case of *Baptist Association* v. *Hart*, and held that courts of equity have jurisdiction over charitable trusts as part of their ordinary jurisdiction over trusts and independently of the statute of Elizabeth. The doctrine of this case has generally been recognized as the law wherever the system of charitable trusts has been accepted at all. (2 Pomeroy's Eq. § 1028, and note; 2 Perry on Trusts, 694; *Howe* v. *Wilson*, 91 Mo. 45, 60 Am. Rep. 226.) It may then be stated as a proposition supported by the great weight of authority in this country, that courts of equity in the various states, where they are not prohibited by statute, exercise an original inherent jurisdiction over charitable trusts, and apply to them the rules of equity, together with such other rules as may be applicable under the laws of the several states; and this they do by virtue of their inherent

powers, without reference to whether the statute of Elizabeth has been adopted in their state.

Many definitions or attempted definitions of a legal charity are to be found in the books, only a few of which will be given here. Mr. Binney, in his great argument in the case of *Vidal* v. *Girard Ex.*, *supra*, defined a pious or charitable gift to be "whatever is given for the love of God, or for the love of your neighbor in the catholic and universal sense— given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private or selfish. The love of God is the basis of all that is bestowed for His honor, the building up of His church, the support of His ministers, the religious instructions of mankind. The love of his neighbor is the principle that prompts and consecrates all the rest." This definition was approved by the supreme court of Pennsylvania. (*Price* v. *Maxwell,* 28 Penn. 23.) In *Ould* v. *Washington Hospital,* 95 U. S. 311, Mr. Justice SWAYNE said: "A charitable use, when neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing or well-being of social man." A more concise and practical definition is probably "a gift to a general public use, which extends to the rich as well as the poor." (*Coggeshall* v. *Pelton,* 7 Johns. Ch. 294, 11 Am. Dec. 471; *Mitford* v. *Reynolds,* 1 Phil. Ch. 191; *Perin* v. *Carey,* 24 How. 465.) Mr. Justice GRAY, in the case of *Jackson* v. *Phillips,* 14 Allen, 556, has given a definition which seems to include all the facts and circumstances and all varieties of charity under the law and leaves nothing to be added. In his words: "A charity, in the legal sense, may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, or by relieving their bodies from disease, suffering or constraint, or by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is

called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." Trusts, for the support of public worship and religious instruction, have always been held charitable. In Perry on Trusts, § 701, referring to the fact that the English statute 43 Elizabeth makes no reference to religious use except the "repair of churches," it is said: "But in a Christian community of whatever variety of faith or form of worship there would be little need of a statute to declare gifts for religious uses to be charitable. Therefore both before and since the statute, gifts for the advancement, spread and teaching of Christianity, or for the convenience and support of worship, or of the ministry, have been held charitable." Mr. Pomeroy says: "The support and propagation of religion is clearly a charitable use. This includes gifts for the erection, maintenance and repair of church edifices, the maintenance of worship, the support of clergymen, the promotion and promulgation of religious doctrines and beliefs in any manner by the Church or by associations, the aid of missionary, bible and other religious societies, and all other objects and purposes which are really religious." (2 Pomeroy Eq. § 1021.) Adopting the language of LEWIS, C. J., in the case of *Price* v. *Maxwell, supra,* " a charitable use is not always a religious one, but we know of no religious use which could be regarded at all as free from superstition that is not included in the definition of a charitable use." Gifts for the erection of a house for public worship, or for the use of the ministry, constitute a public charity when it appears to be some benefit to be conferred upon or duty to be performed towards either the public at large or some part thereof, or an indefinite class of persons. (*Potter* v. *Thornton,* 7 R. I. 252; *Johnson* v. *Mayne,* 4 Iowa, 180; 2 Perry on Trusts, § 701; *Beckwith* v. *The Rector,* 69 Ga. 564.) Tested by all the definitions and descriptions of charities found in the text-books and the illustrations furnished by the decided cases, it is clear that the devise to Wadhams and Leinenweber was for a public charity. Its object was the

advancement of religion through the erection of a house for the public worship of God and supplying a dwelling-house for the minister thereof, or, as the donor himself states it, "for the purpose of advancing and propagating the Christian religion through the agency of the Presbyterian Church." It is "to be applied consistently with existing laws for the benefit of an indefinite number of persons by bringing their hearts and minds under the influence of religion," and therefore has all the requisites of a valid charitable trust. Section 732, Perry on Trusts, cited by counsel for respondent, does not in any way conflict with this doctrine. In that section, Mr. Perry is only discussing the remedy for an abuse of the trust or misemployment of the funds, and not of the validity of a trust for religious purposes, as will readily be seen by an examination of the entire section and the authorities referred to by him. The donor in this case was a devout and active member of the Presbyterian Church, and had been since the early settlement of this coast. He for many years resided in Upper Astoria, and had possessed an intense desire for the establishment of a Church of his chosen belief in that place. But during his life-time he was doomed to disappointment; but when he came to arrange for the final disposition of his property after death, still cherishing that desire and being anxious that those who should reside in his adopted town after him might enjoy the privileges and blessings of which he had been deprived, made this provision in his will. His intention is clear and definitely expressed. The object to which he desired that particular portion of his property to be applied is clearly stated. It is the duty of a court of equity to carry out his intention, if it can be done consistently with existing laws.

It is also claimed that the devise in this case is invalid because there was no *cestui que trust* in existence capable of taking at the time of the donor's death, nor is there now. In disposing of this question, it is well to keep in view the fact that we have a living trustee in whom the testator vested the property with specific direction as to its disposi-

tion. This is not a case where the bequest is for charity generally, or where there is no one *in esse* capable of taking at the time of the testator's death. In Perry on Trusts, § 719, it is said: "There is a wide distinction between a gift to charity and a gift to a trustee to be by him applied to charity. In the first case, the court has only to give the fund to charitable institutions, which is a mere ministerial or prerogative act; in the second case, the court has jurisdiction over the trustee, as it has over all trustees, to see that he does not commit a breach of his trust, or apply the funds in bad faith or to purposes that are not charitable." A gift in trust for a public charity not in existence at the date of the gift, and the beginning of whose existence is uncertain, has repeatedly been held valid by the courts of this country. In *Russel* v. *Allen*, 107 U. S. 163, a grant to John S. Horner and his successors in trust for the use and benefit of the Russell Institute of St. Louis, Missouri, was held to be a charitable gift valid against the donor's heirs, although the institution was neither established nor incorporated in the life-time of the donor or of Allen. In *Jones* v. *Habersham*, 107 U. S. 174, a bequest "to the first Christian Church erected or to be erected in the village of Telfairville, in Burke county, or to such persons as may become trustees of the same," was held valid as a charitable bequest. In *Seda* v. *Huble*, 75 Iowa, 429, 9 Am. St. Rep. 495, a devise was made to certain persons in trust for the benefit of the Catholic Church on the testator's farm; and directed that they and their successors should invest said money safely for the benefit of the Church. It was held that the bequest was for a charitable use clearly defined, and that the title to the money vested in the trustees, and it was immaterial that the beneficiary Church was not and could not be incorporated, and that the bequest was not invalid on the ground that there was no one to call the trustees to an account for the misuse of the funds.

In *Schmidt* v. *Hess*, 60 Mo. 591, a grant of land to a Church was held valid as a charity, and although the Church was at

the time of the grant unincorporated so that no grantee was then *in esse* capable of taking it, and although the language used indicating the intent may be obscure, yet equity will effectuate the trust. To the same effect, see *Inglis* v. *Sailors Sung Harbor*, 3 Peters, 99; *McDonogh* v. *Murdoch*, 15 Howard, 367; *Ould* v. *Washington Hospital*, 95 U. S. 303; *Miller* v. *Chittenden*, 2 Iowa, 315; S. C. 4 Iowa, 252; *Attorney-General* v. *Chester*, 1 Brown's Ch. 389; 2 Perry on Trusts, §§ 730, 736; *Vidal* v. *Girard*, 2 How. 126; *Johnson* v. *Mayne*, 4 Iowa, 180; *Cumming* v. *Trustees*, 64 Ga. 105. No case was cited in the argument, and our research has failed to furnish one, where a court of equity has refused to effectuate a trust for public or charitable purposes, when the fund is given to a trustee competent to take, and when the charitable use is so far defined as to be capable of being specifically executed. The property in this instance is given to a charitable use in every respect consistent with law and public policy. The object is specific and definite and capable of being carried into effect according to the intention of the donor. The property is given to a trustee capable of taking the estate for the benefit of the beneficiaries named. The trust is so far expressed and defined that it can be enforced by virtue of the inherent powers of a court of equity. The beneficiaries are a well-ascertained society of individuals whose rights when organized and established will ever remain a proper subject of easy and accurate judicial inquiry and determination. The devise is, therefore, not like an undefined gift to charity, where there is no trustee nor any designated *cestui que trust*, which many of the courts in this country have refused to uphold. Nor is this a grant to a trustee for charity generally. The trust is fully expressed and clearly defined. An active duty is imposed upon the trustees in respect to the management, disposition and use of the property. They are given power to sell and dispose of the property and invest the proceeds in a specific way. The bequest is accompanied with a designation of the purpose to which it is to be applied, which, as we have already seen, is a charitable object. The

beneficiaries are an indefinite number of persons. In fact, it presents all the requisites of a valid public charity. The gift was immediate and absolute, and it is clear the testator meant that no part of the property devised to Wadhams and Leinenweber should ever go to his heirs at law or be applied to any object than that to which he has devoted it by the devise in question.

It follows, therefore, that the decree of the court below must be reversed, and a decree entered here foreclosing plaintiff's mortgage, and directing that the real estate described in the mortgage belonging to defendant Mary H. Leinenweber be first sold; and if the proceeds arising from such sale be insufficient to satisfy the amount due them and the costs of this suit, then the property devised to defendant Wadhams in trust be sold, or sufficient thereof in order to satisfy said balance, and that appellant recover his costs in this court and the court below.