Argued September 20; affirmed October 17, 1933

IN RE SMITH'S ESTATE
POE *v.* STATE TREASURER
(25 P. (2d) 924)

*David Husted,* of Portland (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*O. C. Roehr,* of Portland (Pendergrass, Wiggins, Barzee & Roehr, of Portland, on the brief), for respondent.

RAND, C. J. This is an appeal from an order of the probate department of the Circuit Court for Multnomah county, holding that a bequest made by the last will and testament of Lotta Chase Smith, who died in said county on January 20, 1931, was not subject to an inheritance tax under section 10-601, Oregon Code 1930. The bequest is in these words:

"Second. I give and bequeath unto THE BOARD OF DIRECTORS OF THE FIRST CHURCH OF CHRIST SCIENTIST in Boston, Massachusetts, all my estate both personal and real, except as herein mentioned, to hold, own, possess, use, and to sell, lease or rent, the proceeds to be used in the interest of the 'Christian Science Monitor', an International newspaper, founded 1908 by Mary Baker Eddy."

Section 10-601, Oregon Code 1930, then provided:

"All property within the jurisdiction of the state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass or vest by dower, curtesy, will or by statutes of inheritance of this, or any other state, or by deed, grant, bargain, sale, or gift, or as an advancement or division of his or her estate made in contemplation of the death of the grantor, or bar-

gainor, or intended to take effect in possession or enjoyment after the death of the grantor, bargainor or donor to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled, in possession or expectation, to any property or income thereof, shall be and is subject to tax at the rate hereinafter specified in section 10-603, to be paid to the treasurer of the state for the use of the state; and whenever property, real or personal, other than estates held by the entirety, is held in the joint names of two or more persons, or deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons, the right of the surviving joint tenant or tenants, person or persons to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this act in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased joint tenant or joint depositor and had been devised or bequeathed to the surviving joint tenant or tenants, person or persons, by such deceased joint tenant or joint depositor by will, excepting therefrom such parts thereof as may be shown to have·originally belonged to such surviving joint tenant, joint depositor or person, and never to have been acquired from the decedent for less than a fair consideration in money or money's worth, and if said property shall have been acquired from decedent for less than such fair consideration, there shall be excepted from the value of said property a portion equal to the amount of the consideration so furnished; and all heirs, legatees and devisees, administrators, executors and trustees, and any such grantee under a conveyance, and any such donee under a gift made during the grantor's or donor's life, shall be respectively liable for any and all such taxes, with interest thereon, until the same shall have been paid as hereinafter provided; provided, however, that devises, bequests, legacies and gifts to benevolent, charitable or

educational institutions, societies, associations or corporations organized or existing within this state and actually engaged in this state in carrying out the objects and purposes for which so organized or existing, or to a corporation, association or society to be organized for such purposes under the laws of this state pursuant to the terms of the instrument providing such devise, bequest or gift; and devises, bequests, legacies or gifts to any corporation, society, institution, person or persons or association of persons in trust for such charitable, benevolent or educational purpose where such devise, bequest, legacy or gift is limited by the donor for use within the United States of America shall be exempt from taxation under the provisions of this act.''

The material part of this statute, under the facts involved in the case at bar, is that contained in the proviso under which an exemption arises. That exempts from taxation, under the act, all property given in trust to any corporation, society, institution, person or persons, or association of persons for charitable, benevolent or educational purposes where the gift is limited by the donor for use within the United States of America. That the legislature, by using the terms ''charitable'', ''benevolent'' and ''educational'' in the disjunctive, intended that the purposes for which the gift was made should include more than merely charitable purposes is obvious. For the purposes of this case, however, it is only necessary for us to consider what is a charitable purpose within the meaning of the act. There have been many definitions of what constitutes a charity. The most satisfactory one seems to be that given by Lord Macnaghten in *Commissioners of Income Tax v. Pemsel,* 1891, A. C., at p. 583. He said:

''Charity in its legal sense comprises four principal divisions: Trusts for the relief of poverty; trusts

for the advancement of education; trusts for the advancement of religion; and trusts for other purposes beneficial to the community, not falling under any of the preceding heads. The trusts last referred to are not the less charitable in the eye of the law because incidentally they benefit the rich as well as the poor, as, indeed, every charity that deserves the name must do either directly or indirectly.''

The case was tried in the court below on a stipulation of facts and without the taking of any oral testimony. Among the facts stipulated was a copy of a special act passed by the general court of Massachusetts and approved February 28, 1917. In the first section thereof, the act refers to the First Church of Christ, Scientist, in Boston, Massachusetts, as ''a body corporate'' and authorizes it to acquire and hold real estate, gifts of money and other personal estate for religious, educational and charitable purposes; to manage, improve, sell and dispose of the same for such purposes subject to the terms of any trust set forth in the instrument under which the same is acquired, and without limitation as to the amount or value of the property so acquired, ''anything in the laws of the commonwealth to the contrary notwithstanding''. Section 2 of the act provides:

''All deeds, gifts or grants and all devises and bequests heretofore or hereafter made to The First Church of Christ, Scientist, in Boston, Massachusetts; The First Church of Christ, Scientist, in Boston; First Church of Christ, Scientist; The Mother Church; The Christian Science Board of Directors; to persons described as The Christian Science Board of Directors, or to persons described as Trustees known as the Christian Science Board of Directors, shall be deemed as giving, granting, conveying, devising or bequeathing the property mentioned in such instruments to

The First Church of Christ, Scientist, in Boston, Massachusetts, unless the contrary clearly appears from the instrument, and the titles passing respectively by such instruments shall be and the same hereby are vested in The First Church of Christ, Scientist, in Boston, Massachusetts, subject to any limitations governing any trust expressed in any such instrument.''

■ By her will, the testatrix gave the property to the board of directors of the First Church of Christ, Scientist, in Boston, Massachusetts, ''to hold, own, possess, use and to sell, lease or rent, the proceeds to be used in the interest of the 'Christian Science Monitor', an International newspaper, founded in 1908 by Mary Baker Eddy''. It is clear from the language used in the will that the testatrix intended, in naming the board of directors of the Church as beneficiaries to give the property to the Church subject to the condition set forth in the will, and, under the law of Massachusetts, to which we have referred, the gift was not to the board of directors but to the Church itself and, upon the death of the testatrix, the title to the bequeathed property became vested in the Church, subject to the limitations expressed in the will.

It was stipulated that the Christian Science Monitor is a newspaper published by the Christian Science Publishing Society of Boston, and it is contended that this publishing society is itself a corporate entity separate and distinct from that of the Mother Church, The First Church of Christ, Scientist, in Boston, Massachusetts, and for that reason it is contended that this gift in trust to the latter for the benefit of the former is no more exempt from taxation under our statute than if it had been given in trust for the benefit of any other privately owned newspaper which is published for the individual profit of its owner.

The stipulation, however, shows that the Christian Science Publishing Society is not a corporate entity, but is composed of trustees who have charge of its business under the direct control and supervision of the board of directors of the Mother Church and who are removable by them at will and that the profits derived from the business of publishing the Christian Science Monitor and other periodicals are paid semiannually to the treasurer of the Church, who is authorized to dispose of such profits only in accordance with the manual of the Church and that preparation of religious publications is the chief business of the trustees. It further appears from the stipulation of facts that Mrs. Mary Baker G. Eddy, on January 25, 1898, conveyed in trust to three named trustees and their successors in the trust certain personal property "in consideration of one dollar * * * and in consideration of their agreement to faithfully observe and perform all the conditions hereinafter specified to be by them observed and performed, and for the purpose of more effectually promoting and extending the religion of Christian Science as taught by me, * * *" and that in said deed she directed, among other things, that:

"1. Said trustees shall hold and manage said property and property rights exclusively for the purpose of carrying on the business, which has been heretofore conducted by the said Christian Science Publishing Society, in promoting the interests of Christian Science; and the principal place of business shall be in said Boston.

"2. The business shall be done by said trustees under the unincorporated name of 'The Christian Science Publishing Society'.

"3. Said trustees shall energetically and judiciously manage the business of the Publishing Society

on a strictly Christian basis, and upon their own responsibility, and without consulting me about details, subject only to my supervision, if I shall at any time elect to advise or direct them.

"4. Said trustees shall keep accurate books of account of all the business done by them, and shall deposit in a responsible and reliable Bank or Trust Company all bonds, * * * Once in every six months the trustees shall account for and pay over to the treasurer of 'The First Church of Christ, Scientist, in Boston, Mass.', the entire net profits of said business. The 'net profits' shall be understood to mean the balance remaining at the end of each six months after paying the usual and legitimate expenses incurred in conducting the business. * * * Said treasurer shall hold the money so paid over to him subject to the order of 'The First Members' of said Church, who are authorized to order its disposition only in accordance with the rules and by-laws contained in the Manual of said Church.''

In *Eustace v. Dickey*, 240 Mass. 55 (132 N. E. 852), where the question involved was the power of the Christian Science Board of Directors to remove one of the trustees of the Christian Science Publishing Society, who was acting as trustee under the deed given by Mrs. Eddy on January 25, 1898, the Supreme Judicial Court, speaking through Mr. Chief Justice Rugg, and referring particularly to that deed, said:

"* * * The parties to the instrument here in question were the founder of a sect of Christianity and three of her followers. The dominating purpose of the instrument was to promote and propagate the interests of that religious sect. As ancillary to that general object, power of removal of the trustees created by that instrument was established. It was vested in two constituent bodies of 'The First Church of Christ, Scientist', then organized and existing. The power of removal of the trustees was an essential part

of the trust deed. The promotion of Christian Science as taught by Mrs. Eddy was the end and aim of the trust. To that regnant design all other provisions, not in themselves made fixed and unchangeable, must yield. Christian Science as thus taught was disclosed by the writings of the founder. The ecclesiastical organization established by her for the teaching and dissemination of Christian Science was 'The First Church of Christ, Scientist'. She did not reserve to herself the power of removal of the trustees but she reposed that authority in 'First Members' and directors of that church. That church was the beneficiary of the trust. That church as shown by the manual at the time of the execution of the trust deed of January 25, 1898, was the dominant church in Christian Science. It was the beneficiary of all net profits arising from the management of that trust. Its board of directors was clothed with extensive powers concerning its management. Its manual appears to be a vital part of Christian Science. The presumption is inevitable that all the parties to the trust deed of January 25, 1898, intended that the power of removal should be vested in the responsible representatives of The First Church of Christ, Scientist, however they might be described or denominated, provided they succeeded to the powers and exercised the functions of First Members and directors. The inference is irresistible that they had in mind the mutability of the names and functions of church officers and intended that the power of removal should vest in such representatives of The First Church of Christ, Scientist, as might from time to time exercise according to the government of that church the functions and possess the powers of those named in the trust deed as having the power of removal. *  *  *,,

██ There can be no question that the First Church of Christ, Scientist, the Mother Church, was a charity since the avowed object of its foundation was for the advancement of religion. Nor can it reasonably be contended that a gift to the Church for the benefit of

the Christian Science Monitor is not a gift for a charitable use, when it is established, as it is here, that the newspaper is being published by the Church in compliance with the directions of Mrs. Eddy, as stated in her deed of January 25, 1898, under which the trust was created, ''for the purpose of more effectually promoting and extending the religion of Christian Science as taught by me'', and when, as said by Mr. Chief Justice Rugg, in referring to that particular trust: ''The promotion of Christian Science as taught by Mrs. Eddy was the end and aim of the trust''.

There is no merit in the contention that the gift made by Mrs. Smith to the Christian Science board of directors for the benefit of the Christian Science Monitor is not limited by the donor for use in the United States. The fact that this newspaper has a circulation beyond the boundaries of our own country is of no importance. It is published and must be published in Boston if the directions of Mrs. Eddy are to be carried out. The expense, therefore, of its publication and mailing will be incurred and will have to be paid at the place of publication and not where the copies are circulated and sold. This condition existed at the time the gift was consummated. It is elementary that the validity of a gift is to be determined by conditions then existing and not by what may happen at a subsequent date.

In passing upon this question, it must be remembered that it is the corpus of the gift and not the profits of a trade with which we are now dealing. Hence, cases holding that profits realized from the carrying on of a trade by a charity or property owned by a charity and used for business purposes are taxable under other laws are not in point.

██ We recognize the principle that exemptions from taxation must be expressed in the statute and are not to be read into it by implication. Inheritance and Estate Taxes, by Pinkerton and Millsaps, section 211, p. 117. Under this statute, the exemption is expressly granted and it is the duty of courts to give to the statute the effect which the legislature intended it to have.

For these reasons, the judgment of the court below must be affirmed, and it is so ordered.

CAMPBELL, KELLY and BAILEY, JJ., concur.