Argued and submitted April 3, reversed and remanded December 3, 1985

The HOUSE OF GOOD SHEPHERD,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(TC 1853; SC S31277)

710 P2d 778

Eugene E. Feltz, Portland, argued the cause for appellant. With him on the brief were Joseph D. McDonald and Palmer, Feltz, Sherry & Smith.

Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General.

LENT, J.

## LENT, J.

The issue is whether a building owned by an incorporated religious organization and housing members of the organization, who live communally by the dictates of their religion, is exempt from real property taxation as property owned by a charitable institution "actually and exclusively occupied or used in the * * * charitable * * * work carried on by" the institution, ORS 307.130, or as "property used solely for * * * charitable * * * purposes by" the religious organization, ORS 307.140.[1] We hold it is exempt.

Plaintiff taxpayer appealed to defendant Department of Revenue from an assessment for the tax year 1981-82 of plaintiff's real property by the Director of the Multnomah County Department of Assessment and Taxation, ORS 305.275, claiming that the property was exempt pursuant to ORS 307.130 and 307.140. Defendant denied the appeal on the ground that the subject property itself is not used primarily for a charitable purpose but as a residence.

Plaintiff thereupon filed a complaint in the Oregon Tax Court, ORS 305.419, alleging that the property is exempt from taxation pursuant to ORS 307.130 and 307.140 because it

---

[1] The pertinent part of ORS 307.130 provides:

"* * * [T]he following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1) * * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

The pertinent part of ORS 307.140 provides:

"* * * [T]he following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations * * *. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any other purpose other than those stated in this section shall be assessed and taxed the same as other taxable property."

We note that while the qualifying uses listed in ORS 307.130 are stated in the disjunctive, those listed in ORS 307.140 are stated in the conjunctive. Neither party here has attached any significance to that, however, and for the purpose of this decision we shall treat ORS 307.140 as if it employed the disjunctive conjunction.

is actually and exclusively occupied or used by plaintiff for a charitable purpose, specifically the advancement of religion. The matter was submitted to the Tax Court on stipulated facts. The court held that the property did not qualify for an exemption under either provision. We disagree.

Plaintiff is a nonprofit corporation, organized under ORS chapter 61 for "religious, benevolent, charitable and educational purposes." The purpose of this corporation is the "advancement of the Catholic religion." The members of this corporation, Roman Catholic nuns known as the Sisters of Good Shepherd, take vows of poverty, chastity, obedience and zeal for souls. They are required by the church to live and pray together as a community and observe the strict rules of their order.

The property at issue is located within the city of Portland. It was acquired by plaintiff for use primarily as a convent[2] for its nuns. The main living room is used for meetings and for counseling individuals and families an average of three to four times a week. The chapel is used for group and private prayer, and mass is offered approximately once a week. The nuns live on the property as a religious community. They work at several charitable and religious places located within the City of Portland, namely, Holy Redeemer Parish, the Rosemont School for Girls, Providence Hospital and St. Vincent dePaul Alcoholic Rehabilitation Center. Their work includes counseling, teaching and pastoral ministry.

The Tax Court began with the assumption that no residence for members of a religious organization can be exempt from taxation unless the primary use of the property is "reasonably necessary for the charitable functions of the taxpayer." The charitable work the Tax Court found relevant was the work the nuns performed outside the convent. The Tax Court concluded that their residence in the convent was not reasonably necessary to the accomplishment of this work.

The requirement of semi-cloistered residence for the organization's members is a tenet of the order. The taxpayer's primary claim is that the manner in which the nuns live and the purpose for which they use their residence is itself a

---

[2] The parties stipulated that the place where nuns of a Catholic religious order live and pray together is called a "convent."

religious objective. The taxpayer contends that this communal living and prayer constitutes a religious practice which of itself advances the religious objectives of the taxpayer and the church to which it belongs.

We have addressed whether residences for church clerics and lay employees are exempt from taxation under ORS 307.130 and 307.140. In *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 27-36, 343 P2d 893 (1959), we interpreted the requirement in ORS 307.130 for exclusive occupation and use to mean primary use for an exempt purpose. We held a residential building on the campus of a religious college exempt. It was occupied by college employees engaged in functions essential to the school whose positions (building superintendent and cafeteria supervisor) required them to live on campus. We held those residences were "reasonably necessary" to the operation of the institution. 218 Or at 36.

In *German Apost. Christ. Church v. Dept. of Rev.,* 279 Or 637, 569 P2d 596 (1977), we interpreted ORS 307.130 to require a taxpayer to demonstrate both a need for the activity undertaken on the property for which exemption is sought and the actual use of the property for this activity. We stated that the activity must be "reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a[n exempt] * * * institution," and the property must be used primarily for this endeavor. 279 Or at 641-42. We held that a cleric's residence may be exempt if the location of the residence near the church is necessary to accomplish a religious objective, for example, to ensure the minister's constant availability to attend to the religious needs of the congregation. 279 Or at 643.

In neither of these cases was there a claim that the manner in which the individuals lived and the purpose for which they used their residence was itself a religious objective, but this is plaintiff's primary claim in the case at bar.

We believe the Tax Court's emphasis to have been misplaced. A religion may be advanced by communal living in an atmosphere of prayer and adherence to canon law. The daily discipline of a religious life is a form of practicing the faith. It is a manifestation of religious belief that promotes, by example, the values of a religion.

■        That being so, we inquire whether the advancement of religion is a charitable use under ORS 307.130 or 307.140. Were we setting quill to unblemished parchment, we might say it is not, but we conclude that the question and answer are not new.

In *Pennoyer v. Wadhams,* 20 Or 274, 25 P 720, 11 LRA 210 (1891), the issue was whether a devise in trust for the erection of a Presbyterian church and parsonage created a trust for a public charitable purpose. The opinion reviews decisions of the Supreme Court of the United States and of various sister states and leading treatises[3] of the period, all of which agreed that the support and propagation of religion is a ° charitable use. This court concluded:

> "Tested by all the definitions and descriptions of charities found in the textbooks and the illustrations furnished by the decided cases, it is clear that the devise * * * was for a public charity. Its object was the *advancement of religion* through the erection of a house for the public worship of God and supplying a dwelling-house for the minister thereof, or, as the donor himself states it, 'for the purpose of advancing and propagating the Christian religion through the agency of the Presbyterian Church.' " (Emphasis added.)

20 Or at 281-82. This court also said, "The property in this instance is given to a charitable use in every respect consistent with law and public policy." 20 Or at 284.

In *Poe v. State Treasurer,* 144 Or 561, 25 P2d 924 (1933), the issue was whether the executrix of the decedent's property was liable for inheritance taxes. The answer turned on whether the property devised and bequeathed in trust for the benefit of The First Church of Christ, Scientist, in Boston, Massachusetts, was for charitable purposes, an exemption under Oregon's inheritance tax law, O.C. § 10-601. The material part of that section exempted from the tax property given in trust to any person for charitable purposes. This court said:

> "For the purposes of this case, however, it is only necessary for us to consider what is a charitable purpose within the meaning of the act. There have been many definitions of what constitutes a charity. The most satisfactory one seems to be

---

[3] The treatises were Perry on Trusts and Pomeroy's Equity Jurisprudence.

that given by Lord Macnaghten in *Commissioners of Income Tax v. Pemsel,* 1891, A.C. at p. 583. He said:

" 'Charity in its legal sense comprises four principal divisions: Trusts for the relief of poverty; trusts for the advancement of education; *trusts for the advancement of religion;* and trusts for other purposes beneficial to the community, not falling under any of the preceding heads. * * *' " (Emphasis added.)

144 Or at 564-65. This court then held:

"There can be no question that the * * * [Church] was a charity since the avowed object of its foundation was for the advancement of religion."

144 Or at 569. The opinion concludes by holding that this exemption was "expressly granted" by the terms of the tax law.[4]

In *Archdiocese v. Dept. of Rev.,* 266 Or 419, 513 P2d 1137 (1973), this court had before it whether the first floor of a two-story building was exempt from taxation under ORS 307.130. The decision states:

"This floor houses (1) printing facilities used to publish The Catholic Sentinel, a weekly newspaper to inform the members of the church of the teachings and work of the church; (2) the offices and library of the Chancery, a canon law tribunal, the function of which is to resolve issues of religious faith; and (3) the office of the administrative assistant to the Archbishop."

266 Or at 420. The decision is contained in a per curiam opinion affirming the judgment of the Oregon Tax Court, *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111 (1972). The Tax Court noted that the Department had argued that while the activities carried on on the first floor were religious, they could not come within the definition of the word "charity." The Tax Court reviewed decisions of other states, finding some that would support the taxpayer's claim and some that would support the Department's position. The Tax Court expressly noted the decisions of this court in *Pennoyer v. Wadhams, supra,* and *Poe v. State Treasurer, supra,* as casting

---

[4] In *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111, 122 (1972), the court mistakenly said that ORS 307.130 was involved in *Poe v. State Treasurer,* 144 Or 561, 25 P2d 924 (1933).

some light on the resolution of the issue. In conclusion, the Tax Court held:

> "The uncontradicted evidence demonstrates that the property sought to be taxed is all owned, occupied and used for the advancement of religion, a charitable use by a religious nonprofit corporation, and is, therefore, not subject to taxation. ORS 307.130."

5 OTR at 124.

It is true that several of the earlier cases concerned a donor's exemption from taxation because the donor's purpose was to make a charitable gift, rather than the exemption of property of a religious entity itself as being used in "charitable work" under ORS 307.130. If "charity" implies charity toward someone, the donor's gift to a church may well be charitable. It also may be true that the legislature today might not be as ready to treat the propagation of every contemporary "religious" viewpoint as *ipso facto* "charitable," as the courts did in the early opinions that equated "religion" with mainstream Christianity. But it is apparent that earlier legislatures and courts did regard the advancement of religion, as understood by them, to be "charitable" for its own sake, and we follow that interpretation of ORS 307.130 until the legislature indicates a different intention.

■ This property is owned by an organization, both religious and charitable. The property is used exclusively for charitable purposes, as we have construed that requirement in the cases discussed herein. The property is exempt from real property taxation.

Reversed and remanded to the Oregon Tax Court for further proceedings in accordance with this opinion.