Argued June 6, affirmed in part, reversed in part, and remanded
September 27, 1977

# GERMAN APOSTOLIC CHRISTIAN CHURCH,
## *Appellant,*
### *v.*
# DEPARTMENT OF REVENUE, *Respondent.*
## (TC 1034, SC 24765)
569 P2d 596

R. W. PicKell, Salem, argued the cause and submitted a brief for appellant.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James Redden, Attorney General, Salem.

Before Holman,* Presiding Justice, and Tongue, Howell, Bryson, Lent, and Linde,* Justices.

LENT, J.

---

*Holman and Linde, JJ., did not participate in the decision of this case.

**LENT, J.**

We review de novo (ORS 305.445) in this case the determination of the Tax Court that certain portions of a building owned by a church are not exempt from ad valorem property taxes under ORS 307.140.

Plaintiff is a nonprofit religious corporation. It owns a 2½-acre parcel near Silverton, Oregon, upon which the church building sits. The congregation is small, consisting of about 60 members in the Portland and Silverton area. Other members of the church reside in Illinois and Europe. Mr. Ernest K. Werner is the Administrating Elder of the local congregation. His duties include the business and religious administration of the church. Mr. Werner attends to both the Portland and Silverton congregations and serves without monetary compensation.

In 1973 plaintiff began construction of another building on its Silverton property. Using donations and gifts of labor and money, it completed a housing facility in 1974, which has been used subsequently for several purposes. The central area of the first floor is used as living space for Mr. Werner and his wife and includes a living room, dining room, kitchen, bath, bedroom and office. A portion of the second floor serves as a guest area and has three bedrooms, two reading rooms, and two baths. The remainder of the two floors is used for six apartments for elderly members of the church, each of which includes a living room, dining and kitchen area, bathroom, and one or two bedrooms.

The County Assessor for Marion County determined that this property was subject to assessment for the 1975-76 tax year. This action was appealed to the Department of Revenue, which upheld the assessment after a hearing pursuant to ORS 306.520 and 306.530. A further appeal was taken to the Tax Court. ORS 306.545. After conducting an evidentiary trial, the Tax Court found the first floor office, a basement meeting area, and a vault to be exempt, but the

remainder of the building to be taxable. Plaintiff contends that the entire building is exempt under ORS 307.140.

Analysis of such claims begins with the "strict but reasonable rule of statutory construction." As we have held:

> "This court is committed to the rule that tax exemption statutes are to be construed strictly but reasonably. * * * Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." Eman. Luth. Char. Bd. v. Dept. of Rev., 263 Or 287, 291, 502 P2d 251 (1972).

With this in mind, we turn to the relevant statutes, ORS 307.140 and ORS 307.130.

ORS 307.140 was amended by the 1973 Legislature. Or Laws 1973, ch 397, § 1. It now reads, with additional language indicated by *underscoring* and deleted language enclosed in brackets, as follows:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:
>
> "(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than [for public worship or schools] those stated in this section shall be assessed and taxed the same as other taxable property."

An analogous statute, ORS 307.130, exempts property of literary, benevolent, charitable and scientific corporations. It provides that:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated

literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1) Except as provided in ORS 748.545, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

The expansion of the coverage of ORS 307.140 in 1973 reflects in part our decision interpreting ORS 307.130 in *Archdiocese v. Dept. of Rev.,* 266 Or 419, 513 P2d 1137 (1973) *aff'g* 5 OTR 111 (1972). The issue in that case was whether the administrative offices of a church diocese were exempt under ORS 307.130. (At that time ORS 307.140 exempted only houses of public worship and buildings of a religious organization used for recreation or entertainment.) Because a religious organization was a "charitable * * * institution" and administration of church business was "charitable * * * work carried on by such institutions," we allowed the exemption. The language added to ORS 307.140 appears to make explicit what was previously implicit under ORS 307.130.[1] This being so, our decisions interpreting ORS 307.130 are of value in discerning the contours of ORS 307.140.

■ To qualify for a charitable exemption under ORS 307.130, the taxpayer must show first that "the activity undertaken on the property substantially contributes to the furtherance of the charity's goals." *YMCA v. Dept. of Rev.,* 268 Or 633, 635, 522 P2d 464 (1974); or, stated another way, that such a use "is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution." *Mult.*

---

[1]The amendments to ORS 307.140 were contained in House Bill 2880 in the 1973 Legislative Session. Tapes of the relevant testimony before the House and Senate Revenue Committees are inaudible or unavailable. Remarks of the proponents of HB 2880 on the House and Senate floors during debate on the measure indicate that it was regarded as a housekeeping law designed to clarify existing law and practice. *See* Remarks of Rep. Cherry (Chairman of the House Revenue Committee) and Rep. Blumenauer, June 15, 1973, and Senator Atiyeh (a sponsor of the bill) and Senator Keith Burns, April 26, 1973.

*School of Bible v. Mult. Co.,* 218 Or 19, 36-37, 343 P2d 893 (1959). Secondly, it must be shown that the property was "exclusively occupied or used" for such a purpose. We have construed this language to require focus upon "the primary as distinguished from an incidental use." *Mult. School of Bible, supra.* If, then, the primary use of the property is reasonably necessary for the charitable functions of the taxpayer, an exemption under ORS 307.130 will be allowed.

■ The text of ORS 307.140, which exempts for religious organizations "property used solely for * * * charitable * * * purposes * * *," lends itself to similar analysis. To qualify for such an exemption, the primary use of the property must advance charitable purposes or goals of the religious organization. There is, however, no nexus between the charitable use of property and the religious purpose of the church. In other words, the use of the property, if charitable, does not have to fulfill a religious function or be directly related to the religious goals of the church. It is enough if the use fulfills a generally recognized charitable function. Under ORS 307.130, the nonprofit corporation exemption statute, the property must be used "in the work carried on by such institutions." Under ORS 307.140, it is only necessary that the use be for charitable purposes, an aim which is broader than the advancement of religion. We conclude, however, that if the charitable use is the advancement of religion, then such use must be primarily for the benefit of the church as well as reasonably necessary for the furthering of the religious aims of the church.[2]

■ Plaintiff contends that the area of the building used as a residence for the Administrating Elder should be exempt. We have not in the past directly ruled on the taxability of a church rectory or parsonage. In *Benevo-*

---

[2] In *Archdiocese v. Dept. of Rev.,* 5 OTR 111 (1972) *aff'd,* 266 Or 419, 513 P2d 1137 (1973), the word "charitable" in ORS 307.130 was construed to include the advancement of religion. The same construction applies by analogy to ORS 307.140.

*lent Society v. Kelly,* 28 Or 173, 195, 42 P 3 (1895), we commented in dictum that:

"* * * [L]aws exempting from taxation 'houses of religious worship,' or 'buildings erected and used for religious worship,' or 'property used for religious purposes,' do not exempt a parsonage erected by a religious society for the use of its minister * * *."

Such an observation no longer appears to be true. *See* Annotation, *Taxation: Exemption of Parsonage or Residence of Minister, Priest, Rabbi or Other Church Personnel,* 55 ALR 3d 356 (1974).

Under ORS 307.140, if exemption is sought because of religious (and therefore charitable) use, the parsonage must be reasonably necessary for the accomplishment of religious objectives of the church. This may be true if, for example, the continuous presence of a religious leader near the church is needed to attend to the religious needs of the congregation. Such a purpose may be at times inferred if residence in a parsonage is required as a condition of the ministry. It may also be true if lack of alternative housing compels the church to furnish its own residence in order to attract a minister.

Once such a necessity is shown, the actual use of the parsonage must be examined. If such use is consistent with the claimed necessity the exemption should be allowed. Moreover, the actual use of the parsonage may be highly relevant in determining its necessity. If the property is substantially used for church functions or rites, entertaining or counseling members of the church and the like, the contention of necessity will be buttressed. Incidental personal benefit to the religious leader of the church will not defeat the exemption, provided that use consistent with a shown necessity is proved.

A similar analysis was employed by the Tax Court in *Lewis & Clark College v. Commission,* 3 OTR 429 (1969). In that case it was held that the residence of the president of a college was exempt from taxation

under ORS 307.130. Evidence was introduced which showed that:

> "* * * [T]he residence was used for conferences involving the administration of the college, for student, faculty, alumni and community meetings, for fund raising gatherings and for the entertainment of visiting educators. From 1966 to 1968 the residence was used on 115 different occasions for official college business. During this period [the president's] guests whose business was directly or indirectly related to the college numbered 670 in 1966, 1007 in 1967 and 733 in 1968. In addition, since 1966 at least one student has lived in the residence at no cost to the student.

> "Dr. Roy E. Lieuallen, Chancellor of the Oregon State System of Higher Education, testified that a residence for the president is highly important in carrying on the functions of educational institutions and is crucial in attracting and hiring a president." (3 OTR at 432.)

An evidentiary foundation of this sort should be made to support a claimed exemption under ORS 307.140.

Our interpretation of ORS 307.140 is consistent with informal opinions of the Department of Revenue issued pursuant to ORS 305.110. In Opinion No. 1815-V (1974) the Department noted that:

> "* * * [I]f the church can show that the Rectory is used primarily for the advancement of religion by the kind of activities that are carried on in the Rectory and if it can demonstrate that it is necessary in the operations of the church that the priest live in the proximity of the church, exemption should be granted * * * under * * * ORS 307.140."[3]

■ After reviewing the evidence, we have concluded that the Tax Court was correct in allowing an exemption for the office room in the Administrating Elder's residence but disallowing further exemption. Insuffi-

---

[3] Similarly, in Opinion No. 1826-V (1975), the Department said, "While it is true that in prior opinions of this department we have held that ministers' living quarters were generally taxable, we are now of the opinion that * * * [the] property can be viewed as being exempt if it is primarily being used and necessary to carry out the objects of the organization."

cient evidence was presented as to the necessity of a parsonage including the specific duties of Mr. Werner which require his continuous presence near the house of worship of the church.

The Tax Court concluded that:

> "The suite designated as guest rooms for visiting officials must also be held taxable. So far as the record shows, these rooms were used for one week in the whole year for official visitors and their spouses. The court deems such use insufficient to merit a tax exemption. There was no other testimony of a use being made of this area." (6 OTR 521, 528).

The requirement of "used solely" in the statute pertains to the character and not the amount of use. *See* Zollman, American Law of Charities 487, § 722 (1924). Infrequent use of property may indicate in part that such utilization is not reasonably necessary for the advancement of church aims. Again, however, insufficient evidence of the necessity for this area was presented. In these particular circumstances, we find that the portion of the property used as a guest area for visiting church officials was not entitled to an exemption under ORS 307.140.

The remaining issue involves the alleged charitable and nonreligious use of the property in the providing of low-rent apartments to needy and older members of the congregation. Under the analysis set forth in *Friendsview Manor v. Tax Com.,* 247 Or 94, 420 P2d 77, 427 P2d 417 (1967), and *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 308-09, 360 P2d 293 (1961), the Tax Court held that this portion of the property was taxable.

In *Methodist Homes, Inc. v. Tax Com., supra,* petitioner sought exemption under ORS 307.130 for a home for the elderly. In deciding whether such a use was "charitable," the court adopted criteria which had been used in previous cases to determine whether a given hospital was or was not a charitable institution.

It was held that weight had been given to the following factors:

   (1) Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed,

   (2) Whether patients or patrons receive the same treatment irrespective of their ability to pay,

   (3) Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed,

   (4) Whether charges are made to all patients and, if made, if lesser charges are made to the poor or if any charges are made to the indigent,

   (5) Whether there is a charitable trust fund created by benevolent and charitably minded persons for the needy or donations made for the use of such persons, and

   (6) Whether the institution operates without profit or private advantages to its founders and the officials in charge.

The court did note, however, that:

> "We do not hold that all the foregoing factors must be present before a given institution can be declared one of charitable or noncharitable pursuits. Nor do we say that the list includes all items which may assist in a conclusion respecting the charitable or noncharitable status of a given corporation. The itemization represents only those particulars which have been in the past employed by this court in discovering if a given hospital is or is not in fact eleemosynary." (226 Or at 310).

A similar analysis was followed in *Friendsview Manor v. Tax Com., supra.*

■ In the present case the Tax Court found each of the above factors supported a finding of charitable use except for the second and third, as to which the testimony was insufficient. The issue before us is whether the renting of the apartments to only elderly church members in need vitiates the finding of a

charitable purpose in an otherwise charitable enterprise. There is no question here that the apartments were rented at a rate well below rentals for comparable housing in the area and at a level designed to cover costs of upkeep. The recipients of this largesse were elderly women with little income. Construction of the facility was made possible by donations of labor and money. The key obstacle to allowing an exemption is whether confining these benefits to only members of the church lends a "self-regarding purpose" to the transactions, rendering them noncharitable. *Ore Physicians' Serv. v. State Tax Com.,* 220 Or 487, 507, 349 P2d 831 (1960).

In *Benevolent Society v. Kelly,* 28 Or 173, 42 P 3 (1895), the court commented that:

> "* * * But under constitutional or legislative provisions, which like ours, provide for the exemption of certain property belonging to 'charitable institutions,' and used for charitable purposes, it is believed that such an institution is entitled to the benefit of the exemption, although its benefactions are confined to its own members or their families. * * *" (28 Or at 191).

It was further noted that:

> "* * * From an examination of this question, and all the authorities within our reach bearing upon it, we take the result to be that an institution organized for benevolent and charitable purposes, free from any element of private or corporate gain, and which devotes its entire revenue to the payment of current expenses and the relief of the poor and needy, is a charitable institution within the meaning of the law, although it may confine its benefits primarily to its own members and their families." (28 Or at 192-93).

We believe that this rule is the correct one. *See* Annotation, 37 ALR 3d 565, 577 (1971), for cases from other jurisdictions allowing an exemption to homes for the aged notwithstanding restrictions which limited admission to a particular class.

It may be that in some cases restriction of charitable benefactions to those of the group dispensing such

[ 647 ]

benefits will reveal that "the 'dominant and controlling' motive of the taxpayer is 'primarily to benefit the taxpayer's membership economically, and only incidentally to further larger public welfare.'" *Ore. Physicians' Serv. v. State Tax Com., supra* at 506. Where those of a group both receive the benefits as well as advance the funds to be dispensed, no motive of altruism can be inferred. But such is not the case here. Lessees of the apartments are required to pay what they can afford and only as much as needed to run the apartments. The availability of low-rent apartments was possible through donations of others and not through any action of their own. An exemption should be allowed for those apartments actually rented to those in need during the tax year.[4]

Affirmed in part, reversed in part, and remanded.

---

[4] It may be that discrimination in favor of members of a church in the renting of apartments owned by the church is illegal under ORS 659.033, which provides that: "No person shall, because of * * * [the] religion * * * of any person: (a) Refuse to sell, lease, or rent any real property to a purchaser." If illegal under this statute, then such activity may be noncharitable for purposes of ORS 307.140. This issue was not raised by the parties, and the court requested additional authorities. Because both parties urged that the statute was not applicable, we do not reach the issue in this case. The defendant at oral argument urged that ORS 307.375, which allows property tax exemptions for certain homes for the elderly, was the only applicable exemption. We conclude that ORS 307.375 does not displace or render inoperative other applicable exemption statutes, including ORS 307.140.