# IN THE OREGON TAX COURT

## The GOLDEN WRIT OF GOD
*v.*
## DEPARTMENT OF REVENUE
(TC 1897)

Jan Arthur Bull, Jan Arthur Bull, P.C., Salem, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 28, 1984.

**EDWARD H. HOWELL, Tax Court Judge Pro Tempore.**

Plaintiff appeals from an order of the Department of Revenue denying plaintiff's claim for a real property tax

exemption for the tax year 1981-1982. Plaintiff is the owner of 230 acres of farmland in Marion County and seeks exemption for the entire parcel as a religious organization under ORS 307.130 and ORS 307.140 and as a school under ORS 307.145.[1] Defendant admits that plaintiff is a nonprofit incorporated religious organization but denies that plaintiff is entitled to an exemption under any of the above statutes.

## BACKGROUND

Plaintiff's organization originated in Alaska in 1960 with a few members. According to the evidence, they were advised by God that their tabernacle was to be in Oregon and not Alaska. In Salem, they contacted a realtor who showed them the subject 230 acres. The members considered the property to be the tabernacle they had been seeking and, in 1980, entered into a contract to purchase the property for $469,000.

The land had a farm use classification as unzoned farmland and in late 1980 was no longer used as farmland.

The property consists of some tillable land previously planted to grass seed, some woodland, a 2,200 square foot

---

[1] On January 1, 1981, the three exemption statutes stated in pertinent part:

ORS 307.130:

"Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1) Except as provided in ORS 748.545, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

ORS 307.140:

"Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein."

ORS 307.145:

"(1) If not otherwise exempt by law, the schools, academies and student housing accommodations, owned or being purchased by incorporated eleemosynary institutions or by incorporated religious organizations, used exclusively by such institutions or organizations for or in immediate connection with educational purposes, are exempt from taxation."

home and a barn and corral. In 1981, between 17 and 22 members, including 11 school-age children, were living in the house.

According to the testimony of some of plaintiff's members, the entire 230 acres, plus the buildings and the trees and native plants growing on the property, constitute the long-sought-after "tabernacle" and all were necessary to accomplish the religious objectives of the organization.

It is plaintiff's position:

"[T]hat the entire property is used religiously twenty four hours a day, three hundred sixty five days a year: 1) for and as the church's house of public worship; 2) for meditiation [sic] and to receive inner guidance from God; 3) for religious services, counseling and teachings; 4) for religious farming of hay and herbs; 5) for religious use of the horses in the learning to be one with the spirit of the horse; 6) to provide food and shelter to the poor and needy; and, 7) to provide a buffer zone to insure protection of the tabernacle for religious use.

"1) [Also] the pathways and forest cathedrals are used for spiritual religious purposes daily; 2) the entire acreage is daily used for returning people to the spiritual pathway of God; 3) the definition of 'tabernacle' according to Webster's dictionary is a house of worship, meaning to take up residence, and the entire property is His house of worship; 4) the church is the land, the farm is the land, and, the school is the land — threefold; 5) the commitment made is not a once per week thing but a lifetime of dedication to God; 6) the tabernacle is the church-school-farm and is inseparable; and, 7) the religious ceremony of Holy Communion (Exhibit 17) takes place on all parts of the tabernacle.

"1) that the heart of the tabernacle was centered in the Trees of Life grove and not the structure on the premises; 2) that the church uses the sunrise and sunset services fields daily to begin and complete each day; * * *.

"[T]hat the entire tabernacle property is necessary and actually used daily by the church in the three Baptisms of Creation: the dew, the sunrise, and, the sunset." (Plaintiff's Memorandum, at 5-6.)

## APPLICATION OF ORS 307.130[2]

---

[2] *Archdiocese of Portland v. Dept. of Rev.*, 5 OTR 111 (1972), *affirmed* 266 Or 419, 513 P2d 1137 (1973), held that the advancement of religion was a charitable purpose under ORS 307.130.

■ In order to qualify for an exemption under the statute "only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable * * * work carried on * * *" is entitled to the exemption.

■ In *German Apos. Church v. Dept. of Rev.,* 279 Or 637, 569 P2d 596 (1977), the court used a two-pronged test for religious and charitable exemption: the property must be reasonably necessary for the accomplishment of the religious objectives of the church and whether the property is substantially used for church functions.

As previously mentioned, the plaintiff contends the entire 230 acres constitutes the tabernacle and entitled to the exemption. Plaintiff has the burden of proof and this court simply is not persuaded that the 230 acres are reasonably necessary for the accomplishment of its objectives nor that the property is substantially used for church functions. If the entire acreage is reasonably necessary for meditation and "returning [17-22 people, including children] people to the spiritual pathway of God," then the same could be said for 1,000 or 5,000 acres.

## APPLICATION OF ORS 307.140

The statute allows a tax exemption for "[a]ll houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein."

Again, and for the same reasons set forth in the discussion on the application of ORS 307.130, I do not believe that plaintiff has sustained its burden of proof to show that the 230 acres are used and reasonably necessary for the accomplishment of plaintiff's objectives. Moreover, I do not believe that the 230 acres of farmland with a house and barn are within the purview of a "house of public worship." See opinion of Lusk, J., in *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111, at 113 and 114 (1972).

## APPLICATION OF ORS 307.145

The statute grants an exemption to schools and student housing of eleemosynary institutions or religious

organizations. "(1) * * * schools, academies and student housing accommodations, owned or being purchased by * * * incorporated religious organizations, used exclusively by such institutions or organizations for or in immediate connection with educational purposes, are exempt from taxation."

Once again, plaintiff contends that the entire property is exempt as a "natural classroom" and that classes are held all over the property. The plaintiff states that classes are given daily to the children as they walk over the tabernacle. Each adult is considered to be a teacher. There was evidence that teaching was conducted in the house. However, there was also evidence that the house was primarily used for living quarters for the some 20 persons who lived there.

In my opinion, the 230 acres were not used exclusively for or in immediate connection with educational purposes under the statute and are not entitled to an exemption under ORS 307.145.

One final issue remains to be decided.

■        Plaintiff contends that the assessor should not have applied the "rollback" provisions of ORS 308.395 when the land no longer qualified as a farm on January 1, 1981. That statute provides for the assessment of additional back taxes when the land is no longer qualified for special assessment because it is not used as a farm.

The land had been receiving a special assessment as unzoned farmland under ORS 308.370(2) since 1971. Plaintiff purchased the land in September 1980 and farming was discontinued. ORS 308.370(3) provides that the entitlement to special farm use assessment is determined as of January 1. If the land is disqualified for special farm use assessment after July 1, the special assessment continues for that year.

In 1979, Marion County enacted a zoning ordinance relating to exclusive farm use zones. (Apparently this was in conjunction with work on the county Comprehensive Plan.) In 1980, the county enacted another zoning ordinance with an emergency clause making it effective June 18, 1980, which changed the zone where plaintiff's land was located to exclusive farm use. Thus plaintiff's land was changed from unzoned farmland to zoned farmland.

ORS 308.395 provides for the collection of additional taxes when the land becomes disqualified for farm use assessment under ORS 308.370(2). However, subsection (5) of the statute as it was in effect in 1980 and January 1, 1981, states:

"(5) Whenever a farm use zone is established as described in subsection (1) of ORS 308.370, and land which is receiving special assessment as farm use land under subsection (2) of ORS 308.370 thereby is included in such zone, and such land is being used exclusively for farm use, the county assessor and tax collector shall cancel any potential additional taxes to be collected under this section."

The property was listed as unzoned farmland on the Marion County tax roll until June 1980 when it became part of the exclusive farm use zone pursuant to the above ordinance effective June 18, 1980.

Plaintiff argues that the 1980 ordinance changing plaintiff's land from unzoned farmland to zoned farmland triggered the provisions of subsection (5) of the above statute and cancelled any rollback of additional taxes.

When the ordinance took effect on June 18, 1980, the property was leased to a farmer who harvested his crop in the fall of 1980. After the crop on the leased land was harvested, the land was no longer used for farming.

Whether the property is unzoned farmland or land in an exclusive farm use zone, the property must be used exclusively for farm use in order to cancel any potential additional taxes to be collected under ORS 308.395 and ORS 308.399. On January 1, 1981, by plaintiff's own admission, no farm crops were raised for profit.

As the property was no longer used as a farm on January 1, 1981, the property was subject to the rollback provisions of ORS 308.399 and the assessor's action in adding additional tax to the land when it was no longer in farm use was correct.