DECISION
Plaintiff appeals Defendant's partial denial of its exemption application. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on November 8, 2007. Rocky Losli (Losli) appeared and testified on behalf of Plaintiff. Elder Hyun Joo Lee (Elder Lee) testified on behalf of Plaintiff. Jacquilyn Saito-Moore, Assistant County Counsel, appeared on behalf of Defendant. Betty O'Rourke, (O'Rourke), Senior Administrative Specialist, testified on behalf of Defendant. This matter is ready for decision.
 I. STATEMENT OF FACTS
In October 2005, Plaintiff was gifted a parcel of land adjacent to its existing church building and parking lot. Plaintiff filed a timely application for property tax exemption for the newly acquired parcel on April 26, 2006, and requested exemption as a religious organization. (Ptf's Ex G.) In a letter dated October 11, 2006, Defendant granted partial exemption for .20 acres which is identified as Account R48308. (Def's Ex A at 10.) It denied exemption for .16 acres and a "vacant single-family dwelling." (Id.) In its letter, Defendant wrote that the application was partially denied because the structure and land were "not in use for your organization's stated purpose on July 1, 2006. This determination was made from a site inspection by this office on June 28, 2006." (Id.) *Page 2 
Prior to receipt of Defendant's denial letter, Plaintiff, through its representatives Losli and Elder Lee, verbally communicated with O'Rourke. Plaintiff requested that one or more of their representatives be present during O'Rourke's site inspection. O'Rourke, who has over 20 years of experience in the area of property tax exemptions, testified that it is not the customary practice of her office to set appointments for site inspections to verify that a property is qualified for exemption and that there is no statutory requirement to inspect the applicant's property. She explained that in most cases "a drive by or walk around" provides sufficient information to grant the exemption. It is customary for her to visit properties requesting exemption the week before July 1 and the week after July 1. O'Rourke testified that if her inspection leaves her with doubts about the qualification of the property for exemption, she follows up with the applicant to request additional information.
Before she could follow-up, Losli contacted O'Rourke on or about July 5, 2006. He testified that he was surprised to hear that she had walked around the property on June 28, 2006. O'Rourke testified that during her inspection, she saw no signage identifying the structure as part of Plaintiff's church complex and the yard was "overgrown with weeds and grass was a foot high." She observed that there was litter ("empty boxes") around the property and piled up on the patio, blocking access to the house from the rear, which faces the church. O'Rourke testified that there was "no one on the premises" and it "looked like an unoccupied house." She was able to see into the house through a partially opened drapery. O'Rourke testified that there were no furnishings, shelves, church books, or symbols in the interior area of the structure that she could see. In subsequent telephone conversations with Losli, O'Rourke requested "evidence of activities to show use," including church bulletins, announcements, or other evidence that would "make it obvious that there was religious use of the property." Failing to receive the evidence she was seeking, O'Rourke issued a letter denying the requested exemption on October 11, 2006. *Page 3 
O'Rourke testified that from March 2007, the approximate date Plaintiff filed its appeal with the Tax Court, until the date of trial, she had visited the property "five or six times." O'Rourke testified that "nothing has changed" except "the litter has been cleared from the back patio and the yard mowed." She observed that "the electric meter was not moving," and she noted that the meter readings had not changed over a period of time. O'Rourke testified that, in her opinion, the subject structure of this appeal "looked abandoned and inaccessible."
In response to Losli's question to describe the exemption process, O'Rourke testified that when she receives an application, she "looks at the law under the" exemption category selected by the applicant. Next, she reviews the "purpose and qualification" of the organization. O'Rourke then looks for the stated use of the property, whether it is a qualifying use that is "reasonably necessary to carry out" the organization's stated purpose. At that point, she is ready to make a field inspection to verify that the use is qualifying and the exemption can be granted. O'Rourke testified that signage is "one factor" she looks for, but "in and of itself it is not determinative." She testified that "only if she is unable to see inside" does she "call for someone to take her through for inspection."
Losli testified that Plaintiff does not understand how Defendant could conclude that it is not using the property for qualifying religious activities. He testified that after checking his personal calendar, he knew that the "facility was used for prayer and worship" on specific dates beginning in November 2005 through June 2006. (Ptf's Property Tax Exemption Appeal at 6.) In addition, after the property was transferred to Plaintiff, Losli testified that "volunteer labor was used to prepare the facilities for public worship and church materials storage" on four days in October 2005. (Id. at 5.) Defendant commented that the purchase of new flooring for the *Page 4 
structure in June 2005 occurred before Plaintiff acquired title to the property. Losli testified that the flooring was "part of the negotiated price" and was needed because the structure did "not look as clean and sharp" as Plaintiff would like.
Losli, who is not a registered voting member of the church, testified that he serves as a property advisor to Plaintiff. Losli previously owned the property, including nine buildings that he gifted to Plaintiff. He has been working with Plaintiff since "1996/97," but "more serious since 2002" and "very close since the sale in October 2005." Losli testified that in his role as a property advisor, he makes "suggestions as to how to use the property," maintain it, and assists with a portion of the property that is rented but not the subject of this appeal.
Losli testified that Plaintiff has fully cooperated with Defendant, providing written answers to Defendant's request for additional information about the use of the structure. (Ptf's Ex F.) In the written response, Plaintiff stated that for the period October 2005 through June 30, 2006, Plaintiff used the property for "church-related activities," including "prayer, worship, giving religious counsel, fellowshipping including sharing a meal." (Id. at 1.) Plaintiff wrote that even though "[a]ll rooms are empty, absent of furniture or furnishings except for two chairs in the area originally identified as family room[.], [t]he wall to wall carpet allows for seating on the floor and kneeling for prayer and worship." (Id.) He testified that the church has been in existence since the "1960s" and the addition of the new structure and parking area has increased attendance over "36 percent" in 12 months. Losli testified that the church and, in particular, the new property provide rooms for the church to "serve the spiritual needs of the community and [church] family." He stated that the structure is approximately 1,400 square feet, including two bedrooms and a garage. Losli testified that "there are no restrictions placed on the use" of the structure. *Page 5 
Elder Lee testified that during a session meeting on August 8, 2005, the voting members agreed to accept the property from Losli. He stated that the minutes of that meeting report that the "open space" will be used as "a temporary parking lot" and the structure, referred to as the "Blue House," will be used "as a temporary housing for visiting missionaries and as a meeting place for church functions." (Ptf's Ex A.) Elder Lee testified that as of the trial date, there had been no use of the structure to house visiting missionaries because there had been none. He testified that he lives close to the church and that "every day" at about 9:00 a.m. he, the church's pastor, and "newly elected Elder Kim" meet in the Blue House for "small group prayer, Bible study, brief worship, and meetings." In addition, Elder Lee testified that the youth members of the church hold their meetings in the Blue House. He stated that there are not "enough individual rooms in the main church building" for all the church activities, "so members of the church go to the Blue House." Elder Lee testified that church-owned property, including folding chairs and maintenance equipment used to take care of the rental property, is stored in the garage. He testified that the kitchen has been used "to make coffee" or for the "fellowship meal shared with Mexican volunteers." Elder Lee described that during the meetings, everyone "sits on the floors" and there are "old pillows" in the living room which are used. He stated that given the current finances of the church, it is "not worthwhile" to spend money on furnishings for the Blue House. In sum, Elder Lee stated that "we are there [using the structure] every day."
 II. ANALYSIS
Plaintiff requests property tax exemption for a structure surrounded by .16 acres. Plaintiff concludes that the structure and surrounding acreage should be exempt because the structure is a "house of public worship" or "other additional building" and the surrounding acreage is "property used solely for administration, education, literary, benevolent, charitable, entertainment *Page 6 
and recreational purposes by" Plaintiff. ORS 307.140(1).[1] The parties agree that the structure is an "additional building," not a "house of public worship." (Id.) The issue before the court is whether the structure is "used solely" for "charitable" or other exempt purposes by Plaintiff.
The court's analysis is guided by the Supreme Court's holding inGerman Apostolic Christian Church v. Department of Revenue, 279 Or 637,642, 569 P2d 596 (1997).[2] The Supreme Court held that to qualify for an exemption under ORS 307.140, "the primary use of the property must advance charitable purposes or goals of the religious organization."Id. "Charitable purposes" include the advancement of religion and any other "generally recognized charitable function." Id.; see also House ofGood Shepherd v. Dept. of Rev., 300 Or 340, 345-47, 710 P2d 778 (1985) (discussing how the advancement of religion is a charitable purpose.) The Supreme Court set forth a two part test. First, the religious use of the property must be "primarily for the benefit of the church."German Apost. Christ. Church, 279 Or at 642. Second, the religious use of the property must be "reasonably necessary for the furthering of the religious aims of the church." Id. Specifically, for property other than residences or parsonages for clergy, the use of the property must relate primarily to church business to qualify for exemption. See Found. ofHuman Understanding v. Dept. of Rev., 301 Or 254, 266, 722 P2d 1 (1986) (holding portions of a ranch that were actually used for religious purposes were exempt.) Further, the Supreme Court held that when "discerning the contours of ORS 307.140," the "decisions interpreting ORS 307.130 are of value." German Apost. Christ. Church, 279 Or at 641. *Page 7 
The burden of proof is on the taxpayer to prove that a claim of exemption meets the statutory requirements. ORS 305.427; Golden Writ ofGod v. Dept. of Rev., 300 Or 479, 483, 713 P2d 605 (1986). The parties do not dispute that if the structure was used, the use was "primarily for the benefit of the church" and the use was "reasonably necessary" to further its "religious aims." German Apost. Christ. Church,279 Or at 642. Based on the evidence presented, this court must determine if during the period October 2005 through June 30, 2006, Plaintiff used the structure.
Sworn testimony describing the use of the structure was given by two individuals, Elder Lee and Losli. Each person testified that he had personal knowledge that the structure was used to further "the religious aims of the church," because prayer meetings, Bible study, brief worship services, administrative meetings, and youth meetings were held in the structure. Elder Lee described the session members' plans for use of the structure and how church members were encouraged to use the structure. Both men testified that church property is stored in the garage. Elder Lee stated that, with the exception of the brief time he was in Brazil on a mission, he was on the property every day and used the structure daily for religious purposes
In contrast, O'Rourke testified that on the one day she visited the property prior to July 1, 2006, she concluded that the property appeared to her to be "abandoned and vacant." She did not see a sign identifying the property as part of the church complex. Further, her requests for objective evidence such as specific dates when the property was used and other documentary evidence such as church bulletins or announcements were not provided or, if provided, did not persuade her that the property was in use.
The court concludes that Plaintiff carried its burden of proof. Even though the structure and the surrounding area did not meet the expectations of Defendant because the grass was tall and other amenities were lacking, it was probably a suitable location for youth meetings and *Page 8 
gatherings. The court finds the testimony of both Elder Lee and Losli credible. Like Defendant, the court is puzzled why Plaintiff's response to O'Rourke's questions were in general terms rather than providing specific information such as Losli's dates of use or a detailed explanation of the use of the structure, specifically use by the youth and session members. Plaintiff's failure to provide the requested information or inability to understand the significance of the requested information resulted in the filing of an appeal and subsequent trial.
Defendant states that "[a]d valorem taxation is premised upon taking a `snapshot' of the subject property on the assessment date and assigning a value to the property as of that date." (Def's Trial Memo at 3.) Defendant suggests that were the court to hold in favor of Plaintiff it would "render the `snapshot rule' moot" because "there was no evidence apparent to the appraiser that the subject property was in use as of June 28, 2006, [the date of the snapshot]." (Id. at 5.) The court fails to understand how its decision will render the "snapshot rule" moot.
ORS 308.205(1) provides for a "snapshot" of the property as of the assessment date for the purpose of determining real market value. The issue before the court is exemption from taxation, not the value of the property on which to assess tax. When considering the issue of exemption, the applicable statute, ORS 307.140(1), allows a review of Plaintiff's use up to and including June 30. The use is not measured by looking to the one day O'Rourke visited the property. The use is measured from Plaintiff's date of ownership through June 30, 2006.
Defendant requests that the court conclude that its prior holding inSummit View Evangelical Covenant Church v. Washington CountyAssessor, TC-MD No 041045A (October 4, 2005) (denying Plaintiff's request that its property be exempt from taxation because even though it was "into the process of converting the subject property to a house of religious worship" it was not "used to a degree sufficient to exempt the property") is applicable to the facts of this case. In that case, Plaintiff took physical possession of the property on June 30, 2004, and the court *Page 9 
concluded that "despite its extensive earlier efforts, it was unable to "transform" a gymnastic center into a house of worship in one day. (Id. at 5.) In the case before the court, Plaintiff took possession of the property more than eight months before June 30, 2006, and in, order to use the structure for religious purposes, it did not need to convert it to a "house of religious worship." Even though it has future plans to demolish the structure to build a new sanctuary or remodel the structure, Plaintiff, during the period of time at issue, was able to use the property "as is" to further its religious goals.
 III. CONCLUSION
After careful consideration of the sworn testimony and evidence, the court finds that Plaintiff's application to exempt property identified as Account R48308 shall be granted. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.
Dated this ___ day of January 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onJanuary 4, 2008. The Court filed and entered this document on January 4,2008.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.
[2] For a complete discussion of the case law see Washington CountyAssessor v. West Beaverton Congregation of Jehovah's Witnesses,Inc., 18 OTR 409 (2006). *Page 1