DECISION
This matter comes before the court on Defendant's motion to dismiss. At issue is whether The Truck Stop ("subject property") qualifies for religious exemption for the 2008-09 tax year under ORS 307.140.[1]
A telephone trial was held on September 1, 2009. Plaintiff is represented by Don Wells, President of The Truck Stop, and Defendant is represented by Tana West, Assessment Manager.
 I. STATEMENT OF FACTS
A. Plaintiff's Organization and the Subject Property.
The subject property is located at 1331 NE 1st Street, Bend, Oregon, 97701. (Def's Ex A-1.) In early 2008, Don Wells, President of The Truck Stop, approached the owner of an indoor skate park (that would become The Truck Stop) and negotiated a new lease with the owner of the building. (Ptf's Compl at 2.) Plaintiff then established itself as an Oregon non-profit organization. (Id.) Plaintiff is also a tax exempt religious organization under 26 USC § 501(c)(3). (Id. at 3.) Plaintiff anticipated receiving a religious property tax exemption under ORS 307.140; thus, Plaintiff "had this exemption built into the language lease and submitted paperwork to [Defendant's] office for approval." (Id.) *Page 2 
B. Actual Usage of the Property.
"Through donor support" Plaintiff made many improvements to the subject property and opened "a small shop area to sell boards, wheels, etc. to help support financially." (Id.) Plaintiff collaborated with youth pastors in Central Oregon "to use [the subject property] as their outreach and to be a place that their youth groups can invite those kids on the outside to come [and] hangout together in a cool non-churchy environment." (Id.) Plaintiff has plans to host concerts and movies on the weekends and various youth group meetings during the week. (Id.)
As recently as November 24, 2008, Plaintiff's website, www.thetruckstoplife.com, contained no mention of a religious purpose or of religious activities. (Def's Ex's B-1, B-2.) It stated that it was under new ownership and operated by a non-profit, and it included features of the park, contact information, skate prices, and a skate schedule. (Id.) As recently as November 6, 2008, the website, www.visitbend.com, identified the subject property as one of many skate parks in Bend. (Def's Ex B-3.)
C. Defendant's Review of Subject Property.
Plaintiff filed an exemption application with Defendant November 5, 2008. Plaintiff failed to submit any evidence with its application for exemption, that religious services take place on the subject property, such as church canons, a schedule of ministry, record of attendance, or other such materials. (Def's Ltr, Dec 1, 2008.) Defendant conducted a site visit to the subject property, during which it asked a staff member "if any religious services were offered at the park and he said no but the owners were Christians." (Answer at 1). Upon its visit to the subject property, Defendant observed that "[t]here were [no] signs or notices of worship services and the primary use of the building was as a skate park." (Def's Ltr, Dec 1, 2008.) Defendant denied Plaintiff's application by letter dated December 1, 2008. Plaintiff timely appealed to this court. *Page 3 
 II. ISSUE
Whether The Truck Stop qualifies for religious exemption under ORS 307.140.
 III. ANALYSIS
A. Rules of Construction in Exemption Cases.
Exemption statutes are strictly but reasonably construed. GermanApost. Christ. Church v. Dept. of Rev. (German Apostolic), 279 Or 637, 640,569 P2d 596 (1977). "Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." Id. at 640 (quoting Eman. Luth. Char. Bd. v. Dept. of Rev., 263 Or 287, 291,502 P2d 251 (1972)). "In close cases, exemptions must be denied."Washington Co. Assessor II v. Jehovah's Witnesses 18 OTR 409, 422
(2006).
B. Applicable Law.
ORS 307.140 provides a property tax exemption for religious organizations as follows:
 "Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:
 (1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property."
C. Applicability of ORS 307.140 to Plaintiff as a Lessee.
ORS 307.112 makes the exemption under ORS 307.140 available to lessees, like Plaintiff. It states:
 "(1) Real or personal property of a taxable owner held under lease, sublease or lease-purchase agreement by an institution, organization or public body, other than the State of Oregon, granted exemption or the right to claim exemption for any of its property under ORS 307.090, 307.130, 307.136, 307.140, *Page 4 
307.145 or 307.147, is exempt from taxation if:
 "(a) The property is used by the lessee or, if the lessee is not in possession of the property, the entity in possession of the property in the manner, if any, required by law for the exemption of property owned, leased, subleased or being purchased by it; and
 "(b) It is expressly agreed within the lease, sublease or lease-purchase agreement that the rent payable by the institution, organization or public body has been established to reflect the savings below market rent resulting from the exemption from taxation."
Plaintiff has complied with the requirements of ORS 307.112 insofar as it has been using the subject property, and it built the exemption into the language of its lease. (Ptf's Compl at 3.)
D. Statutory Test — Primary Use, Reasonably Necessity, and Actual Use.
In order to qualify for a property tax exemption under ORS 307.140, the primary use of the subject property must be the advancement of the religious organization's purposes and goals. As the Court in GermanApostolic explained, "[t]o qualify for * * * an exemption [under ORS307.140], the primary use of the property must advance charitable purposes or goals of the religious organization." 279 Or at 642. The court's focus must be on the primary as opposed to incidental use of the property. Golden Writ of God v. Dept. of Rev. (Golden Writ), 300 Or 479,483, 713 P2d 605 (1986).
Additionally, the subject property must be reasonably necessary for the religious purpose and actually used for qualifying activities. As the court in Golden Writ explained, "[t]he taxpayer must demonstrate that the property claimed to be exempt is reasonably necessary and actually used in a manner required by ORS 307.140 to qualify for an exemption * * * [A] parcel does not qualify for exemption if a taxpayer owns the entire parcel and subjectively dedicates the entire parcel to qualifying activities, but does not actually use the entire parcel for those activities."300 Or at 483-84. "To qualify the entire parcel for exemption under ORS307.140, the taxpayer must actually use the entire parcel primarily for qualifying activities. The criterion *Page 5 
is met when the entire parcel is actually used primarily for qualifying activities or when those portions not actually used are reasonably necessary to accommodate the actual qualifying uses that occur on the remainder of the parcel." Id. at 484.
E. Plaintiff's Burden of Proof.
Plaintiff has the burden of proving that its claim of exemption meets the statutory requirements. ORS 305.427. Here, Plaintiff has failed to submit any evidence — either with its initial application to Defendant or to this court — establishing that the primary use of the subject property is the advancement of its religious purposes and goals. Thus, Plaintiff has not met its burden of proof.
1. Subjective vs. Objective Use of Property.
Plaintiff argues that the subject property is exempt under ORS 307.140
because it is a "skate church" which functions as a non-traditional Christian church primarily serving a youth population. (Ptf's Compl at 2.) Plaintiff emphasizes that its purpose is "not to run a skate park, but to spiritually invest in the youth of our town." (Id. at 3.) Plaintiff believes the subject property qualifies for exemption under ORS307.140 because: (1) it "is a house of public worship * * * used solely for the purpose of our religious organization using entertainment and recreation to make our mission possible", (2) it "is absolutely necessary to accomplish the religious objective of the organization", and (3) "[t]he actual use and occupancy of the property is completely consistent with our claimed necessity. All we do will have the idea of ministry at its core." (Id. at 3-4).
The question of whether a property is used for religious purposes is an objective one. As the court explained in Golden Writ, "[w]e respect the decisions of religious organizations as to the allocation of property to be used within a religious community, but we are not bound by those decisions when objective facts demonstrate nonreligious use of the property." *Page 6 300 Or at 486. In Golden Writ, the court determined that the subject property ("farmland with a house and a barn") did not qualify for religious exemption despite taxpayers' claim that they "saw God every place on the land" because taxpayers had not submitted any objective evidence supporting their claim for exemption. Id. at 484-85. Rather, the court concluded that "[t]he farmland with a house and a barn were just that: farmland, a house and a barn. The property was no different from the farms and homes in which millions of Oregonians have meditated and prayed since this state was founded in 1859." Id. at 486.
In contrast, the court in Subud Portland v. Multnomah County Assessor
(Subud), TC-MD No 070621C (Jan 28, 2009), found that a building owned by a religious organization was exempt even though the organization occasionally rented out the building to both religious and non-religious groups. Subud, at 12, 13. In Subud, "the core religious use of the property" constituted about 68 percent of the total use of the property.Id. at 10. Additional uses raised that percentage to 74. Id. Among those uses that qualified as religious uses were the following: three scheduled worship services and a fourth weekly meeting for religious discussion, numerous charitable fundraising events, religious functions conducted by outside groups, weddings, wedding receptions, and memorial services. Id.
The court found this use sufficient to establish that the primary use of the subject property was religious, even though the religious organization occasionally rented the property to non-religious groups.Id. at 13.
The facts presented here are more similar to those in Golden Writ than to those presented by Subud. Like the farmland with a house and a barn inGolden Writ, the subject property is a skate park, indistinguishable from other skate parks operated for secular purposes. Plaintiff's *Page 7 
website contains no indication that the property is used for religious purposes. (Def's Ex's B-1, B-2). A Bend tourism website identifies the subject property as one of many skate parks in Bend without any mention that it is religiously affiliated. (Def's Ex B-3).
As demonstrated by Subud, many different activities may qualify as religious uses of a property. Furthermore, the occasional use of a property for non-religious purposes may not disqualify the property for religious exemption. However, the religious uses of a property must be primary, explicit, and documented in order to qualify for exemption. Here, Plaintiff claims that it has collaborated with youth pastors in Central Oregon "to use [the subject property] as their outreach and to be a place that their youth groups can invite those kids on the outside to come [and] hang-out together in a cool non-churchy environment." (Ptf's Compl at 3). However, Plaintiff has not submitted any evidence of this use, such as the dates and times of youth group events held at the subject property or an indication of how frequently such events occur.
2. Future Plans for Religious Use.
Plaintiff contends that it plans to host youth group meetings during the week and concerts and movies on the weekends. (Id.) However, Plaintiff has submitted no evidence indicating that it has hosted any such meetings or events during the 2008-09 tax year. As the Court explained in Golden Writ, "the taxpayer must actually use the entire parcel primarily for qualifying activities" in order to qualify for exemption under ORS 307.140. 300 Or at 484. Future plans for use of the subject property will not suffice to establish exemption under ORS 307.140.See e.g., Eman. Luth. Char. Bd. v. Dept. of Rev., 263 Or 287, 502 P2d 251
(1972) (finding that the portion of land held for future hospital expansion did not qualify for charitable exemption under ORS 307.130).[2] *Page 8 
In closing, the court notes that it is not rejecting the notion that the subject property could qualify for exemption under ORS 307.140 if Plaintiff undertook concrete and visible religious activities that would distinguish it from a for-profit, albeit perhaps less expensive, skate park.
 IV. CONCLUSION
Plaintiff has failed to establish that the subject property was used primarily for religious purposes during the 2008-09 tax year. Now, therefore,
IT IS THE DECISION OF THIS COURT that Defendant's motion to dismiss is granted.
Dated this ___ day of January 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on January 22,2010. The Court filed and entered this document on January 22, 2010.
[1] All references to the Oregon Revised Statutes (ORS) are to 2007.
[2] Although that case was decided under ORS 307.130, the charitable exemption statute, Oregon courts have held that ORS 307.140 "lends itself to similar analysis." See e.g., German Apostolic Christ. Church v. Dept.of Rev., 279 Or 637, 642, 569 P2d 599 (1977). *Page 1